NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2256-19
A-2876-19
A-3509-19  RECORD IMPOUNDED
A-4629-19
A-0075-20  RECORD IMPOUNDED
A-0234-20
A-0237-20
A-0547-20

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

CHRISTOPHER HARRIS,

      Defendant-Respondent.
_____

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

DONALD J. FALCONE,

      Defendant-Respondent.
_____

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

APPROVED FOR PUBLICATION

February 18, 2021

APPELLATE DIVISION

v.

JOELL A. FOGG a/k/a
MACKIE JOEY,  A. FOGG,
FOGG JOSEPH,

 Defendant-Respondent.
_____

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

GARY R. NELSON,

 Defendant-Appellant.
_____

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

MANUEL SANTIAGO,

 Defendant-Appellant.
_____

STATE OF NEW JERSEY,

 Plaintiff-Respondent,
v.

THOMAS EDGER,

 Defendant-Appellant.
_____

2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

DAVINE J. RICE,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

FRANK R. MATLACK,

      Defendant-Appellant.

_____

> Argued January 4, 2021 – Decided February 18, 2021
>
> Before Judges Fasciale, Rothstadt and Susswein.
>
> On appeal from interlocutory orders of the Superior Court of New Jersey, Law Division, Cape May County, Indictment Nos. 19-12-0713, 18-08-0615, 19-08-0419, 19-10-0570, and 20-01-0041 and from final orders of the Superior Court of New Jersey, Law Division, Cape May County, Indictment Nos. 17-10-0731, 19-10-0561, 19-12-0734, and 18-06-0455.
>
> Gretchen A. Pickering, Senior Assistant Prosecutor, argued the cause for appellants in A-2256-19, A-2876-19, A-3509-19, and for respondents in A-4629-19, A-0075-20, A-0234-20, A-0237-20 and A-0547-20 (Jeffrey H. Sutherland, Cape May County Prosecutor,

attorney; Gretchen A. Pickering, of counsel and on the briefs).

Stephen P. Hunter, Deputy Public Defender, argued the cause for appellants in A-4629-19, A-0075-20, A-0234-20, A-0237-20, A-0547-20 and for respondents in A-2256-19, A-2876-19 and A-3509-19 (Joseph E. Krakora, Public Defender, attorney; Stephen P. Hunter and Jesse E. Deane, Assistant Deputy Public Defender, of counsel and on the briefs).

The opinion of the court was delivered by

SUSSWEIN, J.A.D.

Once again, we are tasked to interpret the statutory admission criteria for the Drug Court program, which combats the hopelessness of addiction with the hopefulness of treatment. See State v. Meyer, 192 N.J. 421, 423 (2007) (emphasizing that the Drug Court program "address[es] the unique problems and needs posed by non-violent, drug-dependent offenders who, through intensive supervision and treatment, have the high potential for recovery and building a productive life"). In State v. Figaro, we recently explained the important distinctions between the two separate "tracks" by which defendants are admitted to Drug Court. 462 N.J. Super. 564 (App Div. 2020). A Track One candidate[1] must meet all the eligibility criteria for "special probation"

---

[1] Throughout this opinion we use the term "candidate" rather than "applicant" because defendants may be ordered to participate in the Drug Court program without having voluntarily sought treatment and without consenting to

enumerated in N.J.S.A. 2C:35-14(a). A Track Two candidate, in contrast, is not automatically disqualified from Drug Court on the grounds that he or she does not satisfy all the statutory prerequisites for special probation. Rather, the criteria enumerated in N.J.S.A. 2C:35-14(a) may be considered as relevant factors bearing on a Track Two defendant's suitability for participation in Drug Court. Id. at 574–79.

We focus in this opinion on the criteria for determining whether a defendant is a Track One or Track Two candidate. The eight cases before us raise essentially the same statutory interpretation issues.[2] The State contends—and the trial court agreed—a defendant is a Track One candidate if he previously was convicted of a crime that was subject to the presumption of imprisonment set forth in N.J.S.A. 2C:44-1(d) or previously was sentenced to state prison. Defendants argue the Track One designation applies only to a Drug Court candidate who is facing the presumption of imprisonment or a mandatory term of parole ineligibility for the present conviction for which he

---

(continued)
admission. See N.J.S.A. 2C:35-14.2(b). We note that all of the defendants before us in this appeal voluntarily applied for Drug Court.

[2] We note that all eight defendants are now represented by the same Deputy Public Defender and the State in all eight cases is represented by the same Senior Assistant County Prosecutor.

A-2256-19

or she is to be sentenced.  In resolving this statutory interpretation dispute, we address a question of first impression, that is, whether the special probation statute, N.J.S.A. 2C:35-14, was impliedly amended by subsequently-enacted statutory features that are designed to identify and deal with defendants in need of treatment who do not voluntarily apply to Drug Court, N.J.S.A. 2C:35-14.1 and N.J.S.A. 2C:35-14.2.

After carefully examining the relevant statutes, legislative history, and case law, we reject the State's interpretation of N.J.S.A. 2C:35-14 and hold that the trial court erred in ruling that a defendant is a Track One candidate by reason of past convictions or having previously been sentenced to state prison. Our goal in this opinion is to distill a set of rules for judges to apply when determining, first, whether a drug dependent defendant is a Track One or Track Two candidate for Drug Court; second, whether the defendant is legally eligible to be sentenced to Drug Court; and third, whether a legally eligible candidate should be admitted to Drug Court in the exercise of judicial sentencing discretion.

## I.

We granted defendants Edger, Santiago, Nelson, Rice, and Matlack leave to appeal Law Division orders denying their applications for admission to Drug Court.  We calendared their appeals back-to-back and now consolidate

them for the purpose of issuing a single opinion. We also granted the State leave to appeal Law Division orders granting defendants Falcone, Fogg, and Harris admission to Drug Court. Those orders were entered by a different judge than the judge who denied admission to the other five defendants in this consolidated appeal.

A.

We briefly set forth the relevant circumstances surrounding each appeal.

Defendants' Appeals

Thomas Edger

Defendant Edger was indicted on one count of fourth-degree aggravated assault by throwing bodily fluids at a law enforcement officer, N.J.S.A. 2C:12-13, and one count of third-degree terroristic threats, N.J.S.A. 2C:12-3(a). He also faces another charge for fourth-degree aggravated assault.

Edger was previously convicted of third-degree theft and third-degree possession of controlled dangerous substances (CDS) for which he was sentenced to probation. He later violated probation and was resentenced to three years in state prison. Thereafter, he was again convicted for third-degree possession of CDS for which he received a three-year state prison sentence. Edger also was previously convicted of fourth-degree aggravated assault for which he received a one-year state prison sentence.

7

The trial court rejected Edger's application for Drug Court. The court found that Edger was a Track One candidate based on his previous state prison sentences. The court further ruled that Edger's prior conviction and pending charge for aggravated assault rendered him ineligible for special probation. See N.J.S.A. 2C:35-14(a)(7).

After the present appeal was filed, the trial court amplified its decision, highlighting Edger's significant criminal history and his failure to take advantage of a previous opportunity for probation. The trial court added that even if Edger were deemed to be a Track Two candidate, admission to Drug Court would be inappropriate considering the applicable aggravating and mitigating factors. The court found aggravating factors three, the risk that the defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3); six, the extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted, N.J.S.A. 2C:44-1(a)(6); and nine, the need for deterring the defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9). The court found that mitigating factor ten, that the defendant is particularly likely to respond affirmatively to probationary treatment, N.J.S.A. 2C:44-1(b)(10), did not apply.

The record before us does not indicate whether the trial court considered a Treatment Assessment Services for the Courts (TASC) evaluation or the recommendation of the evaluator.

Manuel Santiago

Defendant Santiago was indicted on three counts of aggravated assault in the second and third degree, N.J.S.A. 2C:12-1(b)(1), (12), and (13); one count of third-degree terroristic threats, N.J.S.A. 2C:12-3(b); and one count of second-degree child endangerment, N.J.S.A. 2C:24-4(a)(2). Santiago pled guilty to one count of third-degree aggravated assault on a domestic violence victim for which he was sentenced to three years of probation. He was charged with violating this probation once in February and again in March 2020 for failure to cooperate in examination/tests/counseling and for testing positive for drugs and alcohol.

Santiago was previously convicted of second-degree possession of CDS with intent to distribute for which he was sentenced to three years in state prison. He also was previously convicted of three disorderly persons marijuana offenses and an ordinance violation.

The trial court rejected Santiago's application for Drug Court. The court found that Santiago was a Track One candidate based on his previous state prison sentence. The court further ruled that Santiago's prior aggravated

A-2256-19

assault conviction rendered him ineligible for special probation. See N.J.S.A. 2C:35-14(a)(6).

After the present appeal was filed, the trial court amplified its decision, highlighting Santiago's significant criminal history, prior state prison sentence, and failure to take advantage of a previous opportunity for probation. The trial court added that even if Santiago were deemed to be a Track Two candidate, admission to Drug Court would be inappropriate considering the applicable aggravating and mitigating factors. The court found aggravating factors three, the risk that the defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3); six, the extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted, N.J.S.A. 2C:44-1(a)(6); and nine, the need for deterring the defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9). The court found that mitigating factor ten, that the defendant is particularly likely to respond affirmatively to probationary treatment, N.J.S.A. 2C:44-1(b)(10), did not apply.

The record before us does not indicate whether the trial court considered a TASC evaluation or the recommendation of the evaluator.

Gary Nelson

Defendant Nelson was indicted on one count of third-degree vehicular burglary, N.J.S.A. 2C:18-2(a)(1). He also faces a separate pending charge for

10

fourth-degree aggravated assault by throwing bodily fluid at a law enforcement officer, N.J.S.A. 2C:12-13.

Nelson was previously convicted of third-degree aggravated assault for which he was sentenced to five years in state prison, third-degree burglary for which he was sentenced to two years in state prison, and second-degree burglary and violation of probation (VOP) for which he was sentenced to three years in state prison. He also has an extensive history of ordinance violations and disorderly persons offenses for theft, wandering, and trespass.

The trial court rejected Nelson's application for Drug Court. The court found that Nelson was a Track One candidate based on his previous second-degree conviction and state prison sentences. The court further ruled that Nelson's pending aggravated assault charge, previous aggravated assault conviction, and numerous other second and third-degree convictions rendered him ineligible for special probation. See N.S.J.A. 2C:35-14(a)(6), (7), (9).

After the present appeal was filed, the trial court amplified its decision, highlighting the violent nature of Nelson's criminal history and current pending charges, prior state prison sentences, and failure to take advantage of a previous opportunity for probation. The trial court added that even if Nelson were deemed to be a Track Two candidate, admission to Drug Court would be inappropriate considering the applicable aggravating and mitigating factors.

11

The court found aggravating factors three, the risk that the defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3); six, the extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted, N.J.S.A. 2C:44-1(a)(6); and nine, the need for deterring the defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9). The court found that mitigating factor ten, that the defendant is particularly likely to respond affirmatively to probationary treatment, N.J.S.A. 2C:44-1(b)(10), did not apply.

The record before us does not indicate whether the trial court considered a TASC evaluation or the recommendation of the evaluator.

<u>Davine Rice</u>

Defendant Rice was indicted on two counts of third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1), and one count of third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(3). Rice also faces separate pending charges for possession and distribution of CDS.

Rice was previously convicted for possession of CDS with intent to distribute for which he was sentenced to four years in state prison. He also has previously been convicted for third-degree aggravated assault.

The trial court rejected Rice's application for Drug Court. The court found that Rice was a Track One candidate, noting that if Rice were convicted

12

of his pending charges of possession of CDS with intent to distribute, he would be considered a repeat offender and his charges would carry a presumption of imprisonment with an extended term, if deemed appropriate.[3] The trial court also found that pursuant to N.J.S.A. 2C:35-14(a)(7), defendant was barred from admission under Track One because of his prior conviction for third-degree aggravated assault. The trial court also found that Rice's significant criminal history involving possession of CDS with intent to distribute would present a danger to the Drug Court community.

After the present appeal was filed, the trial court amplified its decision, again highlighting Rice's violent criminal history, past convictions and pending charges involving drug distribution, and prior state prison sentences. The trial court added that even if Rice were deemed to be a Track Two candidate, admission to Drug Court would be inappropriate considering the applicable aggravating and mitigating factors. The court found aggravating factors three, the risk that the defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3); six, the extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted, N.J.S.A. 2C:44-1(a)(6); and nine, the need for deterring the defendant and others from

---

[3] The record does not indicate whether the prosecutor has filed an application for an extended term of imprisonment and parole ineligibility pursuant to N.J.S.A. 2C:43-6(f). See infra note 13.

violating the law, N.J.S.A. 2C:44-1(a)(9). The court found that mitigating factor ten, that the defendant is particularly likely to respond affirmatively to probationary treatment, N.J.S.A. 2C:44-1(b)(10), did not apply.

The record before us does not indicate whether the trial court considered a TASC evaluation or the recommendation of the evaluator.

Frank Matlack

Defendant Matlack was indicted on two counts of third-degree possession of CDS, N.J.S.A. 2C:25-10(a)(1).

Matlack has an extensive criminal history dating back to 1987, including convictions for second-degree robbery (1987), disorderly persons possession of marijuana (1994), fourth-degree theft and subsequent VOP (1996), disorderly persons obstruction (1991), third-degree resisting arrest (1997), disorderly persons disorderly conduct (2006), and disorderly persons contempt of a domestic violence order (2007).

The trial court denied Matlack's application for Drug Court. The court found that Matlack was a Track One candidate based on prior convictions, previous prison sentences for second-degree robbery and third-degree resisting arrest, and currently pending third-degree charges.

The trial court also found that given Matlack's criminal history, prior prison sentences, and prior probationary sentences, "probation would not be

appropriate even if defendant was a Track [Two] offender. The defendant's criminal history is serious, the risk of re-offense is high, and the defendant is not likely to respond affirmatively to probation." Unlike the amplifications issued for the other four defendants, the trial court's decision made no explicit determinations as to applicable aggravating or mitigating factors.

The record before us does not indicate whether the trial court considered a TASC evaluation or the recommendation of the evaluator.

State's Appeals

Donald Falcone

Defendant Falcone was indicted on two counts of third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1). He pled guilty to one of the third-degree CDS counts in exchange for the State's agreement to drop the other count. Falcone previously served time in prison for a criminal conviction for aggravated assault.

A substance abuse evaluator determined that Falcone was clinically eligible for Drug Court. The trial court determined that Falcone was eligible for Drug Court under Track Two. The trial court found aggravating factors three, the risk that the defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3); six, the extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted, N.J.S.A. 2C:44-

1(a)(6); and nine, the need for deterring the defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9). The trial court also found mitigating factor ten, that the defendant is particularly likely to respond affirmatively to probationary treatment, N.J.S.A. 2C:44-1(b)(10). The trial court found that mitigating factor ten outweighed the three aggravating factors when viewed within the context of the rehabilitative opportunity presented by Drug Court. The court thereupon sentenced Falcone to Drug Court.

Joell Fogg

Defendant Fogg pled guilty to one count of third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1) and was sentenced to five years of probation. Fogg later incurred new charges of third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1), and fourth-degree hindering, N.J.S.A. 2C:29-3(b)(1), which resulted in violation of his original probation. He pled guilty to these charges.

Fogg previously served an out-of-state prison sentence for sexual abuse of a minor, which the State contends would have constituted second-degree sexual assault under New Jersey law, N.J.S.A. 2C:14-2(c)(4). Fogg served another out-of-state prison sentence for failure to register as a sex offender.

A substance abuse evaluator determined that Fogg was clinically eligible for Drug Court. The trial court determined that Fogg was legally eligible for Drug Court under Track Two. The trial court found aggravating factors three,

the risk that the defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3); six, the extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted, N.J.S.A. 2C:44-1(a)(6); and nine, the need for deterring the defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9). The trial court also found mitigating factor ten, that the defendant is particularly likely to respond affirmatively to probationary treatment, N.J.S.A. 2C:44-1(b)(10). The trial court found that mitigating factor ten outweighed the three aggravating factors when viewed within the context of the rehabilitative opportunity presented by Drug Court. The court thereupon sentenced Falcone to Drug Court.

Christoph Harris

Defendant Harris was indicted on one count of third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1), and a disorderly persons offense for wandering or prowling to obtain or sell CDS, N.J.S.A. 2C:33-2.1(b). Harris pled guilty to the third-degree CDS possession charge in exchange for the State's agreement to drop the disorderly persons offense and to recommend probation. Harris was sentenced to four years of probation, but later violated that probation.

Harris was previously convicted in 1998 of third-degree aggravated assault and third-degree possession of a weapon for an unlawful purpose. In

17

2005, he was convicted of third-degree possession of CDS and sentenced to probation. He violated probation two months later by violating a restraining order and received another probationary sentence. In 2008, Harris was convicted of third-degree possession of CDS for which he received a three-year state prison sentence.

A substance abuse evaluator determined that Harris was clinically eligible for Drug Court. The trial court determined that Harris was legally eligible for Drug Court under Track Two. The trial court found aggravating factors three, the risk that the defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3); six, the extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted, N.J.S.A. 2C:44-1(a)(6); and nine, the need for deterring the defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9). The trial court also found mitigating factor ten, that the defendant is particularly likely to respond affirmatively to probationary treatment, N.J.S.A. 2C:44-1(b)(10). The trial court found that mitigating factor ten outweighed the three aggravating factors when viewed within the context of the rehabilitative opportunity presented by Drug Court. The court thereupon sentenced Harris to Drug Court.

18

B.

Defendants Santiago, Nelson, and Matlack present identical arguments for our consideration, contending:

I. THIS MATTER SHOULD BE REMANDED FOR RECONSIDERATION OF THE DRUG COURT APPLICATION BECAUSE THE JUDGE DID NOT APPLY CORRECT LEGAL PRINCIPLES IN FINDING THAT [DEFENDANT]'S "PRIOR CONVICTIONS AND PRISON SENTENCES" REQUIRE HIM TO MEET THE CONDITIONS OF N.J.S.A. 2C:35-14 IN ORDER TO BE SENTENCED TO DRUG COURT ON HIS VOLUNTARY APPLICATION.

A. THE JUDGE MISINTERPRETED THE PLAIN LANGUAGE OF N.J.S.A. 2C:35-14, 14.1, AND 14.2 BECAUSE THE LEGISLATIVE SCHEME UNDER 14.1 AND 14.2 ONLY CREATES A PRESUMPTION IN FAVOR OF DRUG COURT IN CERTAIN CASES. ON THEIR PLAIN TERMS, THE STATUTES NEVER BAR A PERSON WHO IS VOLUNTARILY APPLYING TO DRUG COURT.

B. THE JUDGE'S OPINION, WHICH GRAFTED ADDITIONAL REQUIREMENTS ONTO TRACK TWO ADMISSION, IS INCONSISTENT WITH THE DRUG COURT MANUAL AND CASE LAW, INCLUDING THIS COURT'S RECENT OPINION IN STATE V. FIGARO, 462 N.J. SUPER. 564 (APP. DIV. 2020).

19

Defendants Edger and Rice raise the following contentions[4]:

[I.]     THE TRIAL COURT WAS IN ERROR IN FINDING THAT [DEFENDANT] IS A TRACK ONE DRUG APPLICANT.

[II.]     THE APPLICATION OF [N.J.S.A.] 2C:35-14.1, ET SEQ IS IMPROPER.

[III.]     THE TRIAL COURT WAS IN ERROR IN FAILING TO APPLY THE DOCTRINE OF LENITY.

The State contends that defendants Falcone, Fogg, and Harris should have been classified as Track One candidates by reason of their criminal histories and prior prison sentences, and that they are legally ineligible for special probation under N.J.S.A. 2C:35-14(a).

Having considered the arguments in light of the record and applicable legal principles, we reverse the matters in which the trial court denied the Drug Court applications for defendants Edger, Santiago, Nelson, Rice, and Matlack and remand for further proceedings consistent with this opinion. We affirm the decisions to admit defendants Falcone, Fogg, and Harris to Drug Court.

## II.

We review the trial court's interpretation of the relevant statutes de novo, without deference to the court's reasoning, because "appeals construing

---

[4] We note that despite the differences in the wording of the point headings, the substantive arguments raised by defendants Edger and Rice are substantially similar to the arguments raised by defendants Santiago, Nelson, and Matlack.

N.J.S.A. 2C:35-14 and the [Drug Court] manuals present solely questions of law." Figaro, 462 N.J. Super. at 571 (quoting State v. Maurer, 438 N.J. Super. 402, 411 (App. Div. 2014)). We begin our analysis by acknowledging the distinction between the Drug Court program and the statutory framework that supports it.

Drug Court is a nationally acclaimed program created and administered by the New Jersey judiciary to link qualified drug dependent defendants to court-supervised and state-funded treatment and aftercare services. The program offers "a new and innovative way [to address] the problem of drug dependent offenders caught in a never-ending cycle of involvement in the criminal justice system[.]" Meyer, 192 N.J. at 434–35. The Court in Meyer explained, "Drug Courts are a creature of the judiciary. As a subpart of the criminal part of the Law Division, Drug Courts are subject to the constitutional purview of [the Supreme Court of New Jersey], which executes its policies through the Administrative Office of the Courts." Id. at 430.

N.J.S.A. 2C:35-14 is a sentencing statute that authorizes an alternative to imprisonment known as "special probation." Although N.J.S.A. 2C:35-14 is commonly referred to as the "Drug Court statute," see, e.g., Maurer, 438 N.J. Super. at 412, the term Drug Court does not appear in the statutory text. Figaro, 462 N.J. Super. at 566 ("N.J.S.A. 2C:35-14 does not establish and

21

indeed does not even mention Drug Courts." (quoting <u>Meyer</u>, 192 N.J. at 428)). N.J.S.A. 2C:35-14 is a tool used by Drug Court judges to admit defendants who otherwise would be required by law to be sentenced to state prison.[5] Without the sentencing option authorized by N.J.S.A. 2C:35-14, Drug Court would not be available to defendants who are facing the presumption of imprisonment codified in N.J.S.A. 2C:44-1(d) or a mandatory term of parole ineligibility.

To provide context with which to understand the alternate sentencing option created in N.J.S.A. 2C:35-14, the Supreme Court in <u>Meyer</u> succinctly summarized the general sentencing features of the New Jersey Code of Criminal Justice (Penal Code), N.J.S.A. 2C:1-1 to 104-9, explaining:

> The [Penal Code] gives a court various options in sentencing an offender, which include the imposition of a term of imprisonment or probation. <u>See</u> N.J.S.A. 2C:43-2. If an offender has been convicted of a first- or second-degree crime, he is subject to a presumption

---

[5] N.J.S.A. 2C:35-14 is a complex, highly detailed, multi-part statute that addresses all aspects of special probation including initial eligibility and admission criteria; the type and intensity of treatment services that are provided to special probationers; the duration of court supervision; violation, revocation, and reinstatement standards and procedures; rewards for exemplary progress in the course of treatment; expungement of records; and criteria for successful discharge from special probation. This appeal focuses on the criteria for imposing special probation as a sentencing option in lieu of imprisonment set forth in N.J.S.A. 2C:35-14(a).

of incarceration,[6] which may only be overcome if the court "is of the opinion that . . . imprisonment would be a serious injustice which overrides the need to deter such conduct by others." N.J.S.A. 2C:44-1d. Conversely, if a first-time offender is convicted of a crime other than one of the first or second degree, he is subject to a presumption of non-incarceration. N.J.S.A. 2C:44-1e. If, as in this case, a defendant is convicted of third- and fourth-degree crimes, but has a prior record, he is not subject to either presumption. See State v. Pineda, 119 N.J. 621, 622–23 (1990). When that occurs, the sentencing court "must weigh the aggravating and mitigating factors" enumerated in N.J.S.A. 2C:44-1a and b "to determine whether a probationary or custodial sentence is appropriate." State v. Baylass, 114 N.J. 169, 173 (1989).

[192 N.J. at 433 n.5 (third alteration in original) (emphasis added).]

As we noted in Figaro, on multiple occasions the Supreme Court has explained that there are two separate and distinct "tracks" for admission to Drug Court. 462 N.J. Super. at 566 (referring to Meyer, 192 N.J. at 431–33;

---

6 We note that N.J.S.A. 2C:44-1(d) establishes a presumption of "imprisonment." Cf. State v. O'Connor, 105 N.J. 399, 409–11 (1987) (holding the presumption of imprisonment is not satisfied by imposing a term of incarceration in county jail as a condition of probation). N.J.S.A. 2C:35-14(a) refers to a presumption of "incarceration." The terms "presumption of incarceration" and "presumption of imprisonment" are used interchangeably in our case law. See, e.g., State v. Hyland, 238 N.J. 135, 141 n.2 (noting that "N.J.S.A. 2C:35-14 removes the presumption of incarceration otherwise applicable to a defendant under N.J.S.A. 2C:44-1(d)"). Hyland and the above-quoted synopsis in Meyers—both Drug Court cases—confirm that the "presumption of incarceration" referred to in N.J.S.A. 2C:35-14(a) is the presumption codified in N.J.S.A. 2C:44-1(d).

State v. Clarke, 203 N.J. 166, 174–77 (2010); State v. Hyland, 238 N.J. 135, 144 n.3 (2019)). Although both tracks lead ultimately to the same destination—participation in Drug Court—they employ distinct eligibility criteria.

Track One is reserved for defendants who are facing the presumption of imprisonment set forth in N.J.S.A. 2C:44-1(d) or a mandatory term of parole ineligibility. Those defendants must rely on N.J.S.A. 2C:35-14 to steer clear of the statutory presumption of imprisonment or a mandatory minimum sentencing statute. Accordingly, a Track One candidate must meet all the prerequisites for special probation set forth in N.J.S.A. 2C:35-14. See Maurer, 438 N.J. Super. at 413 (noting that "[u]nder the first track, to meet the requirements for special probation, the applicant must have committed a crime that is subject to a presumption of incarceration or a mandatory prison term, and the judge must find that the applicant satisfies nine separate factors" (quoting Clarke, 203 N.J. 174–76)). See also Administrative Office of the Courts, "Manual for Operation of Adult Drug Courts in New Jersey" (July 2002) (the 2002 Manual)).[7]

---

[7] As we discuss later in this opinion, the Administrative Office of the Courts (AOC) promulgated the original Drug Court Manual in 2002. The 2002 Manual was later revised in 2019 as the "New Jersey Statewide Drug Court

The nine prerequisites to special probation under N.J.S.A. 2C:35-14 are:

> (1) the person has undergone a professional diagnostic assessment to determine whether and to what extent the person is drug or alcohol dependent and would benefit from treatment; and
>
> (2) the person is a drug or alcohol dependent person within the meaning of N.J.S. 2C:35-2 and was drug or alcohol dependent at the time of the commission of the present offense; and
>
> (3) the present offense was committed while the person was under the influence of a [CDS], controlled substance analog or alcohol or was committed to acquire property or monies in order to support the person's drug or alcohol dependency; and
>
> (4) substance use disorders treatment and monitoring will serve to benefit the person by addressing the person's drug or alcohol dependency and will thereby reduce the likelihood that the person will thereafter commit another offense; and
>
> (5) the person did not possess a firearm at the time of the present offense and did not possess a firearm at the time of any pending criminal charge; and
>
> (6) the person has not been previously convicted on two or more separate occasions of crimes of the first or second degree, other than those listed in paragraph (7); or the person has not been previously convicted on two or more separate occasions, where one of the offenses is a crime of the third degree, other than crimes defined in N.J.S. 2C:35-10, and one of the

---

(continued)

Manual," and was again revised in 2020. We refer to these specifically as the 2019 or 2020 Manual, or generally as the Drug Court Manual.

offenses is a crime of the first or second degree; and

(7) the person has not been previously convicted or adjudicated delinquent for, and does not have a pending charge of murder, aggravated manslaughter, manslaughter, kidnapping, aggravated assault, aggravated sexual assault or sexual assault, or a similar crime under the laws of any other state or the United States;[8]

(8) a suitable treatment facility licensed and approved by the Division of Mental Health and

(9) no danger to the community will result from the person being placed on special probation pursuant to this section.

[N.J.S.A. 2C:35-14(a)(1)– (9).]

Track Two is reserved for drug dependent defendants who are _not_ subject to the statutory presumption of imprisonment or a mandatory term of parole ineligibility. Those defendants may be admitted to Drug Court under the general sentencing provisions of the Penal Code, and specifically, pursuant to the statutory authority of the court to impose a probationary sentence under

---

8   We note that although N.J.S.A. 2C:35-14(a)(7) categorically disqualifies defendants who were previously convicted of certain specified crimes, it does not disqualify defendants who are charged with a violation of probation stemming from an underlying disqualifying offense. See Figaro, 462 N.J. Super. at 576–77 ("The [2019] Manual does not prohibit screening VOPs for possible admission where the underlying charge was aggravated assault, even though a prior conviction for aggravated assault is a statutory bar to admission under N.J.S.A. 2C:35-14(a)(7).").

N.J.S.A. 2C:45-1.  N.J.S.A. 2C:45-1 is sometimes referred to as "regular"[9] probation as distinct from "special probation" authorized by N.J.S.A. 2C:35-14.  Eligibility for entry into Drug Court via Track Two thus does not hinge on satisfying the nine specified prerequisites for special probation enumerated in N.J.S.A. 2C:35-14.  Rather, eligibility via Track Two is governed by the Drug Court Manual.  Figaro, 462 N.J. Super. at 573.

In Figaro, we rejected the State's argument that a single set of eligibility criteria—those set forth in N.J.S.A. 2C:35-14—applies to applications under both Track One and Track Two.  Id. at 577.  The practical effect of the State's interpretation in that case would have been to exclude candidates who did not meet all of the prerequisites for special probation even though they were not subject to the statutory presumption of imprisonment and thus did not need to resort to N.J.S.A. 2C:35-14 to remove that presumption.

---

[9] We emphasize that Track Two defendants who are sentenced to Drug Court pursuant to N.J.S.A. 2C:45-1 receive the same treatment, support, and aftercare services that are provided to defendants admitted via Track One pursuant to N.J.S.A. 2C:35-14.  Those services are based on each individual's clinical needs, not the track via which the defendant was admitted.  We add that once accepted into the program, a Track Two candidate's participation in Drug Court is wholly different from "regular" probation under N.J.S.A. 2C:45-1 in terms of the level of services and intensity of court supervision.  See Meyer, 192 N.J. at 429 ("Participants in drug court programs are subject to intensive supervision, frequent drug testing, and regular court appearances, combined with treatment and recovery services.").

After conducting a thorough analysis of the Drug Court Manual and the statutory framework, we concluded that a trial court may, in the exercise of its discretion, consider the nine enumerated criteria in N.J.S.A. 2C:35-14 as relevant factors that bear on the Track Two defendant's suitability for participation in the program. Id. at 574–79. However, a Track Two candidate is not categorically precluded from admission to Drug Court on the grounds that he or she has not satisfied all nine factors. Id. at 574–79.[10] Thus, for example, a Track Two candidate with multiple prior convictions that would disqualify him or her from special probation under N.J.S.A. 2C:35-14(a)(6) could be admitted to Drug Court in the discretion of the trial court. So too a Track Two candidate who was previously convicted of an offense specified in N.J.S.A. 2C:35-14(a)(7) could be admitted to Drug Court in the court's

---

[10] The Drug Court Manual has since been amended to adopt the conclusion we reached in Figaro. As explained in the AOC memorandum promulgating the 2020 Manual, the latest revisions "reflect that admissions for Track Two [candidates] are not to be held to the same standards for admission as those applying under Track One." AOC Memorandum, "Revised Drug Court Manual – Revisions Regarding Admission Criteria" (Dec. 23, 2020) (AOC Memo).

The 2019 Manual provided that "[a] drug court prosecutor can recommend a legal rejection based on N.J.S.A. 2C:35-14 and whether the applicant is a potential danger to the community." (2019 Manual at 9). The 2020 Manual, revised in response to our decision in Figaro, now reads: "[a] drug court prosecutor can recommend a legal rejection based on Track One cases pursuant to N.J.S.A. 2C:35-14 or, if it is a Track Two case, on whether the applicant is a potential danger to the community." (2020 Manual at 9).

discretion notwithstanding that prior conviction would categorically disqualify him or her from being sentenced to special probation under N.J.S.A. 2C:35-14.

III.

To provide historical context for the novel statutory interpretation issues presented in this appeal, we briefly recount the parallel evolution of the statutory framework and the Drug Court program. We begin by noting that the statutory foundation for Drug Court was enacted long before the program itself was conceived. That groundwork was laid in the Comprehensive Drug Reform Act of 1987, L. 1987, c. 106 (codified as N.J.S.A. 2C:35-1 to 36A-1) (CDRA). The CDRA was a legislative response to the proliferation of crack cocaine, which first appeared in the New York metropolitan area and rapidly swept across the nation. The emergence of crack and the violence and suffering it spawned prompted Congress and state legislatures to enact new laws that relied chiefly on prisons to address the swiftly evolving substance abuse problem. By design, the CDRA profoundly toughened New Jersey's criminal drug laws.

As its title suggests, the CDRA was intended to be comprehensive in prescribing the type and quantum of punishment for all levels of drug offenders, ranging from casual users who faced the prospect of mandatory cash penalties and loss of driving privileges, see N.J.S.A. 2C:35-15 and N.J.S.A.

29

2C:35-16 (repealed by L. 2019, c. 276, § 20), to drug trafficking kingpins who faced mandatory life imprisonment with a twenty-five year term of parole ineligibility, N.J.S.A. 2C:35-3. The declaration of policy and legislative findings to the CDRA explained that,

> [i]n order to be effective, the battle against drug abuse and drug-related crime must be waged aggressively at every level along the drug distribution chain . . . . [I]t is the policy of this State to distinguish between drug offenders based on the seriousness of the offense, considering principally the nature, quantity and purity of the controlled substance involved, and the role of the actor in the overall drug distribution network.
>
> [N.J.S.A. 2C:35-1.1(c)].

The CDRA replaced the drug offenses that previously had been codified in Title 24 and moved them to Title 2C. The declaration of policy and legislative findings explained, "[t]he transfer of the provisions of the 'New Jersey Controlled Dangerous Substances Act,' [L. 1970, c. 226 (N.J.S.A. 24:21-1 to -56)] into the penal code which is accomplished herein, along with the amendments and supplements thereto, will better ensure that the most culpable drug offenders will be subject to swift prosecutions and strict, consistently imposed criminal sanctions[.]" N.J.S.A. 2C:35-1.1(d).

The Title 24 offenses predated the Penal Code and did not grade offenses using the degree classification system set forth in chapters 43 and 44 of Title 2C. The Title 24 offenses, moreover, had been enacted at a time when

A-2256-19

judges were afforded virtually unrestricted sentencing discretion. The CDRA's declaration of policy and legislative findings explained,

> [u]nder the current drug laws [in Title 24], there are inadequate sentencing guidelines with which consistently to identify the most serious offenders and offenses and to guard against sentencing disparity and the resulting depreciation of the deterrent thrust of the criminal law. In order to protect the public interest, and so as to deter, disrupt and eliminate the operation of organized drug trafficking networks, it is necessary to undertake a comprehensive reexamination of our controlled dangerous substances laws, procedures and sentencing practices.
>
> [N.J.S.A. 2C:35-1.1(d).]

The Penal Code, in sharp contrast to Title 24, focuses on general deterrence and carefully channels the exercise of judicial sentencing discretion, using presumptions to guide the so-called "in-out" decision. See N.J.S.A. 2C:44-1(d) and (e). Those presumptions account for the degree of the crime for which a defendant is convicted. The CDRA assigned a degree classification to each new drug offense, thereby automatically incorporating the Penal Code's presumptions of imprisonment and non-incarceration. See State v. Molina, 114 N.J. 181, 185–86 (1989) (noting that Penal Code sentencing provisions that relate to the degree of crime do not apply to Title 24 drug offenses).

31

In addition, the CDRA includes a number of mandatory[11] sentencing provisions that prescribe minimum terms of parole ineligibility for certain drug offenders, including those convicted of distribution/possession with intent to distribute CDS while within 1,000 feet of a school, N.J.S.A. 2C:35-7;[12] distribution/possession with intent to distribute a first-degree amount of specified types of CDS, N.J.S.A. 2C:35-5(b)(1); leader of a narcotics trafficking network, N.J.S.A. 2C:35-3; maintaining or operating a CDS production facility, N.J.S.A. 2C:35-4; employing a juvenile in a drug distribution scheme, N.J.S.A. 2C:35-6; and drug distribution/possession with intent to distribute if the defendant has previously been convicted of such an offense, N.J.S.A. 2C:43-6(f).[13]

---

[11] The "mandatory" minimum sentences prescribed by the CDRA can be waived or reduced, but only under two circumstances: a negotiated plea agreement with the prosecutor pursuant to N.J.S.A. 2C:35-12, or special probation pursuant to N.J.S.A. 2C:35-14.

[12] The school zone offense was amended in 2009 to restore judicial sentencing discretion, allowing the court to reduce or waive entirely the stipulated three-year parole ineligibility term without the prosecutor's consent unless the offense is committed while actually on school property or the defendant in the course of committing the offense used or threatened violence or was in possession of a firearm. See N.J.S.A. 2C:35-7(b).

[13] N.J.S.A. 2C:43-6(f) prescribes a mandatory extended term of imprisonment that includes a minimum term of parole ineligibility. This mandatory sentence, however, is invoked only "upon application of the prosecuting attorney[.]" See State v. Lagares, 127 N.J. 20, 23 (1992) ("Whether an

As intended, the CDRA resulted in a significant increase in the number and proportion of drug offenders sentenced to state prison. To be comprehensive, however, the CDRA needed to address crimes committed by drug dependent offenders who do not make rational risk/benefit decisions and for whom the general deterrence sentencing strategy might therefore prove ineffective. See N.J.S.A. 2C:35-1.1(c) ("It is the intention of the Legislature to provide for the strict punishment, deterrence and incapacitation of the most culpable and dangerous drug offenders, and to facilitate where feasible the rehabilitation of drug dependent persons so as ultimately to reduce the demand for illegal [CDS] and the incidence of drug-related crime."). Accordingly, the CDRA included an innovative feature that authorized sentencing courts to impose treatment in lieu of an otherwise statutorily prescribed term of imprisonment. As we explained in Figaro, "N.J.S.A. 2C:35-14 was enacted in 1987 as part of the [CDRA] . . . 'to craft a new disposition alternative that

_____

(continued)
extended term is imposed depends on the prosecutor because Section 6(f) takes effect on his or her application."). To ensure statewide uniformity as required by Lagares, the Attorney General has provided guidance to prosecutors on whether to apply for or waive an extended term pursuant to N.J.S.A. 2C:43-6(f). See Directive Implementing Guidelines for Determining Whether to Apply for an Extended Term Pursuant to N.J.S.A. 2C:43-6(f) (Apr. 20, 1992) (Lagares Guidelines); see also Revised Attorney General Guidelines for Negotiating Cases under N.J.S.A. 2C:35-12 (July 15, 2004), § 3.6 at 15-16 (Brimage Guidelines).

allowed a court to divert prison-bound defendants into an intensively monitored and long-term program of rehabilitation.'" 462 N.J. Super. at 571 (quoting Hyland, 238 N.J. at 144) (second and third alterations in original).

N.J.S.A. 2C:35-14 equipped sentencing courts with a statutory tool with which to break the cycle of drug dependence and criminality by authorizing a sentencing option that relies on treatment rather than on imprisonment. The farsighted goal expressed in N.J.S.A. 2C:35-14 remained unfulfilled, however, because there was at the outset no practical way for judges to link drug dependent offenders—especially indigent defendants—with clinically appropriate treatment and monitoring services. That leads us to the creation of the Drug Court program.

A few Drug Courts became operational on an experimental basis in the mid-1990s to deal with drug dependent offenders who were overburdening the criminal justice system. Meyer, 192 N.J. at 430. In 1997, the AOC, in association with the executive branch, initiated a statewide Drug Court program with the assistance of state and federal funds, including monies that had been appropriated to address a prison overcrowding state of emergency caused in part by the CDRA. See ibid. These specialized courts were created by the Supreme Court through an AOC directive. Maurer, 438 N.J. Super. at 415.

34

The Drug Court program was designed to "address the seemingly intractable social problem presented by the scourge of drugs that has devastated countless families and is the source of so many collateral crimes." Meyer, 192 N.J. at 429. The program provides non-violent drug dependent defendants "an opportunity to recover from the throes of their addiction and the cycle of their involvement with the criminal justice system." Id. at 428. Drug Courts, moreover, benefit society, not just program participants, by impeding the cycle of recidivism, thereby promoting public safety, and by "yielding cost-savings to our overburdened criminal justice system." Id. at 423.

As the program took hold and expanded, the AOC recognized the need to standardize Drug Court practices and procedures. "The AOC issued the first Drug Court Manual in 2002 'to implement "uniform statewide eligibility criteria" to ensure equitable operation of the Drug Court program throughout the State.'" Figaro, 462 N.J. Super. at 567 (quoting Meyer, 192 N.J. at 431). The AOC issued an updated Manual in 2019. As we have noted, the 2019 Manual was revised in 2020 to account for our decision in Figaro.

Our courts have repeatedly recognized the positive role Drug Courts play in our society. Maurer, 438 N.J. Super. at 408; Clarke, 203 N.J. at 174. So too has the executive branch repeatedly acknowledged the success and

35

value of the Drug Court program. Maurer, 438 N.J. Super. at 410. As noted in Maurer, an Executive Order by the Governor issued in 2011 recognized that, "New Jersey's Drug Court . . . helps to achieve the overriding goal of the New Jersey Code of Criminal Justice to protect public safety by reducing the incidence of crime . . . ." Id. at 410–11 (quoting Preamble to Executive Order No. 83, "Creation of the Governor's Task Force on Recidivism Reduction," (Nov. 28, 2011), 44 N.J.R. 3(a) (Jan. 3, 2012)). The program had earlier been lauded in the Attorney General's Brimage Guidelines, which described N.J.S.A. 2C:35-14 as "the legal cornerstone for New Jersey's Drug Court Program, which is among the most important and promising initiatives designed ultimately to protect public safety by helping to break the vicious cycle of crime and addiction." Brimage Guidelines, § 3.13 at 21–22.

The proven success of the Drug Court program and the broad recognition by all three branches that it promotes public safety has given the Legislature incentive and confidence to amend N.J.S.A. 2C:35-14 to expand the circumstances when sentencing courts may eschew imprisonment in favor of rehabilitative treatment. As we noted in Figaro, the Legislature "has moved inexorably toward expanding [N.J.S.A. 2C:35-14] as a sentencing alternative." Figaro, 462 N.J. Super. at 571. In 1999, for example, the Legislature expanded N.J.S.A. 2C:35-14 to include defendants who were convicted of non-violent

crimes not defined in the CDRA. L. 1999, c. 376 § 2. Until then, N.J.S.A. 2C:35-14 only applied to defendants convicted of drug distribution/possession with intent to distribute crimes. See Meyer, 192 N.J. at 434. In 2012, N.J.S.A. 2C:35-14 was amended to include defendants convicted of second-degree robbery and second-degree burglary—defendants who had previously been categorically excluded from special probation. L. 2012, c. 23, § 5.

IV.

We next examine closely how N.J.S.A. 2C:35-14 operates to permit treatment in lieu of imprisonment. N.J.S.A. 2C:35-14(a) provides in pertinent part:

> Any person who is ineligible for probation due to a conviction for a crime which is subject to a presumption of incarceration or a mandatory minimum period of parole ineligibility may be sentenced to a term of special probation in accordance with this section, and may not apply for drug and alcohol treatment pursuant to N.J.S. 2C:45-1 [specifying the conditions of regular probation]. Nothing in this section shall be construed to prohibit a person who is eligible for probation in accordance with N.J.S. 2C:45-1 due to a conviction for an offense which is not subject to a presumption of incarceration or a mandatory minimum period of parole ineligibility from applying for drug or alcohol treatment as a condition of probation pursuant to N.J.S. 2C:45-1[.]

N.J.S.A. 2C:35-14 thus provides a means by which a sentencing court may avoid imposing a term of parole ineligibility that otherwise would be

mandated by the CDRA.  Importantly for purposes of this appeal, it also provides a mechanism by which a sentencing court may avoid having to apply the presumption of imprisonment set forth in N.J.S.A. 2C:44-1(d).  See Hyland, 238 N.J. at 141 n.2 ("The State now agrees that N.J.S.A. 2C:35-14 removes the presumption of incarceration otherwise applicable to a defendant under N.J.S.A. 2C:44-1(d).").

Absent this explicit exemption from the presumption of imprisonment, a sentencing court would effectively be precluded from imposing any form of probation, regular or special, and would instead be required to sentence a defendant in need of treatment to state prison.  The presumption of imprisonment in N.J.S.A. 2C:44-1(d), it bears noting, is exceptionally strict; aside from the exemption established in N.J.S.A. 2C:35-14, the presumption can only be overcome if the sentencing court finds that "imprisonment would be a serious injustice which overrides the need to deter such conduct by others."  As the Supreme Court made clear in State v. Jarbath, the "serious injustice" exception is "extremely narrow:  it should be applied only under circumstances that are 'truly extraordinary and unanticipated.'"  114 N.J. 394, 406 (1989) (quoting State v. Roth, 95 N.J. 334, 358 (1984)).  "It is . . . the rare case," the Court added, "where imprisonment for serious crimes will not further the goals of general deterrence."  Id. at 408.

The Court also explained that the "serious injustice" exception is designed to avoid disproportionate punishment, not to advance the goal of rehabilitation. Id. at 407. "[Drug and alcohol addiction] is unfortunate," the Court lamented, "but not exceptional. . . . Many crimes arise out of drug and alcohol use. [Defendant's] situation, while regrettable, is not rare." Ibid. (quoting Roth, 95 N.J. at 368). See also State v. Bishop, 429 N.J. Super. 533, 539 (App. Div. 2013) (noting the presumption of imprisonment "is rarely overcome" and that for offenders subject to the presumption "a regular probationary sentence is almost never appropriate under the [Penal] Code's general sentencing provisions").

We explained in Figaro when the presumption of imprisonment applies in the context of admission to Drug Court. 462 N.J. Super. at 572 ("Special probation is only available to offenders who are 'ineligible for probation due to a conviction for a crime which is subject to a presumption of incarceration or a mandatory minimum period of parole ineligibility.'" (quoting N.J.S.A. 2C:35-14(a) (alteration in original))). The cases now before us suggest the need for further explanation.

The presumption of imprisonment that is incorporated by reference in N.J.S.A. 2C:35-14(a) is defined in N.J.S.A. 2C:44-1(d). N.J.S.A. 2C:44-1(d) is a critical sentencing feature. See John M. Cannel, Title 2C New Jersey

39

Criminal Code Annotated, cmt. 7 on N.J.S.A. 2C:44-1(d); see also State v. Natale, 184 N.J. 458, 483 n.10 (2005) ("When sentencing, a court first must make the 'in-out' decision—whether a term of imprisonment is appropriate in light of the relevant presumptions for and against incarceration." (citing N.J.S.A. 2C:44-1(d) and (e))).  Its application is by no means limited to offenders being considered for admission to Drug Court.

N.J.S.A. 2C:44-1(d) reads in its entirety:

> The court shall deal with a person who has been convicted of a crime of the first or second degree, or a crime of the third degree where the court finds that the aggravating factor in paragraph (5) [("there is a substantial likelihood that the defendant is involved in organized criminal activity")], (14) [("the offense involved an act of domestic violence . . . committed in the presence of a child under 16 years of age")] or (15) [("the offense involved an act of domestic violence . . . and the defendant committed at least one act of domestic violence on more than one occasion")] of subsection a. of this section applies, by imposing a sentence of imprisonment unless, having regard to the character and condition of the defendant, it is of the opinion that the defendant's imprisonment would be a serious injustice which overrides the need to deter such conduct by others.  Notwithstanding the provisions of subsection e. of this section [establishing a presumption of non-incarceration], the court shall deal with a person who has been convicted of theft of a motor vehicle or of the unlawful taking of a motor vehicle who has previously been convicted of either offense by imposing a sentence of imprisonment unless, having regard to the character and condition of the defendant, it is of the opinion that imprisonment

> would be a serious injustice which overrides the need to deter such conduct by others.[14]

The plain language of N.J.S.A. 2C:44-1(d) makes clear that—aside from the explicit caveat for repeat automobile theft offenders—the presumption is triggered by the gradation and circumstances of the <u>present</u> offense for which the defendant is to be sentenced. <u>See</u> <u>State v. O'Connor</u>, 105 N.J. 399, 404–05 (1987) ("The plain language of [both the presumptions of imprisonment and of non-incarceration] indicates that the applicable presumption is to be determined not by the sentence imposed but by the offense for which a defendant is convicted."). A defendant is not subject to the presumption of imprisonment because he or she was <u>previously</u> convicted of a first or second-degree crime.

The plain text shows conclusively that the Legislature knew how to use prior convictions as a trigger for the presumption but did so only with respect to repeat automobile theft offenders.[15] <u>Cf.</u> <u>DiProspero v. Penn</u>, 183 N.J. 477,

---

[14] The presumption of imprisonment also applies when a defendant has been convicted of N.J.S.A. 39:6A-8(a) (fraudulent certification of the seriousness of plaintiff's injuries in an automobile case).

[15] The presumption of non-incarceration set forth in N.J.S.A. 2C:44-1(e), it should be noted, expressly accounts for the defendant's prior criminal history. A defendant who has previously been convicted of an offense of any gradation is ineligible for that statutory presumption. The plain language of N.J.S.A. 2C:44-1(e) shows once again the Legislature knew how to account for and

A-2256-19

495 (2005) ("'The canon of statutory construction, expressio unius est exclusio alterius—expression of one thing suggests the exclusion of another left unmentioned—sheds some light on the interpretative analysis.'" (quoting Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 112 (2004))). So too the plain language of the text shows the Legislature knew how to include defendants who are presently convicted of a third-degree crime but did so only when the sentencing court finds aggravating factor five, N.J.S.A. 2C:44-1(a)(5), fourteen, N.J.S.A. 2C:44-1(a)(14), or fifteen, N.J.S.A. 2C:44-1(a)(15).

We recognize that as a practical matter, a defendant's prior convictions or past incarceration in state prison may make it unlikely that a court in the exercise of its discretion would sentence him to probation after applying the pertinent aggravating and mitigating factors, including especially aggravating factor six, N.J.S.A. 2C:44-1(a)(6) ("The extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted."). We emphasize, however, that it would put the cart before the horse to suggest that the practical likelihood of a prison sentence triggers the presumption of imprisonment defined in N.J.S.A. 2C:44-1(d) and incorporated

_____

(continued)
refer to prior convictions when guiding the "in-out" sentencing decision but did not do so in the presumption of imprisonment except with respect to repeat automobile theft offenders.

by reference in N.J.S.A. 2C:35-14(a). The presumption of imprisonment, after all, is intended to guide the so-called "in-out" sentencing decision. Natale, 184 N.J. at 483 n.10. A court's independently made decision to impose a prison sentence based on the weighing of aggravating and mitigating factors does not somehow trigger the presumption after the in-out decision has already been made. See Meyer, 192 N.J. at 433 n.5 (requiring a court to weigh the aggravating and mitigating factors when neither the presumption of imprisonment nor presumption of non-incarceration applies).

V.

The remaining statutory interpretation issue before us is whether the phrase "ineligible for probation due to a conviction for a crime which is subject to a presumption of incarceration" in N.J.S.A. 2C:35-14(a) is meant to use a different operational definition of the presumption of imprisonment than the one set forth in N.J.S.A. 2C:44-1(d). As we have noted, there is no doubt that the presumption of incarceration referenced in N.J.S.A. 2C:35-14(a) is the same presumption codified in N.J.S.A. 2C:44-1(d). See supra note 6. The novel question raised in this appeal is whether, as the State asserts, the Legislature intended to use different criteria to invoke the presumption of imprisonment when deciding whether a defendant is eligible for special probation.

43

Specifically, the State contends that a defendant presently convicted of a third-degree crime who has previously been convicted of a crime that was subject to the presumption of imprisonment, or has previously been convicted of a crime that actually resulted in a state prison sentence, must be classified as a Track One candidate. The State in essence borrows language from N.J.S.A. 2C:35-14.1(a)(2)(b) and grafts it onto the operational definition of a person who is ineligible for probation for purposes of N.J.S.A. 2C:35-14(a). After carefully examining the entire statutory framework that supports Drug Court, we reject the State's argument. We believe the State conflates the test for determining whether a defendant must be evaluated for drug dependence under N.J.S.A. 2C:35-14.1 with the separate and distinct test for determining whether a defendant is ineligible for probation within the meaning of N.J.S.A. 2C:35-14.

A.

The State's interpretation requires us to closely examine the groundbreaking legislative revisions to the CDRA enacted as part of L. 2012, c. 23 (2012 Amendments). The 2012 Amendments added two new sections to chapter 35 of the Penal Code: N.J.S.A. 2C:35-14.1 and N.J.S.A. 2C:35-14.2. L. 2012, c. 23, § 1, 2. These sections explain when a judge must intervene,

44

literally, when dealing with a defendant who appears to be in need of drug treatment but who has not voluntarily applied to Drug Court.

The 2012 Amendments included other provisions that expanded the reach of Drug Court by enlarging the spectrum of crimes eligible for special probation[16] and by eliminating a prosecutor's authority to veto a Track One defendant's admission.[17] The 2012 Amendments went much further, however, in broadening the reach of the Drug Court program. For the first time, the Legislature squarely addressed a different kind of impediment that was preventing the full use of Drug Courts to break the cycle of crime and addiction: denial. Denial is an all-too-common symptom of the disease of addiction. By its inherent nature, denial imposes limits on the scope of any treatment intervention system that depends on addicts reaching out for help on their own volition.

---

[16] As we have already noted, the 2012 Amendments authorized special probation for defendants presently convicted of second-degree robbery and second-degree burglary—crimes that previously had rendered defendants categorically ineligible for special probation. L. 2012, c. 23, § 5.

[17] As we explained in Maurer, "prior to the [2012] amendments, N.J.S.A. 2C:35-14(c) granted the prosecutor the right to object to an otherwise qualified defendant's entry into Drug Court and, absent a showing of 'gross and patent abuse of [the prosecutor's] discretion,' a court could not override that objection and admit the defendant to Drug Court. Subsection (c) was deleted in the 2012 amendments." 438 N.J. Super. at 414.

A-2256-19

In Bishop, we explained that "[p]rison-bound offenders are given an opportunity to be diverted from a state prison sentence <u>if they are willing to avail themselves of the rehabilitative opportunities available in Drug Court</u> in an effort to free themselves from the recurring cycle of drug dependency and criminal activity." 429 N.J. Super. at 548 (emphasis added). Regrettably, some prison-bound offenders are not willing on their own initiative to avail themselves of that life-changing opportunity.

As we also noted in <u>Bishop</u>, as far back as 1996, the Attorney General "call[ed] for new ways to support drug court programs. One way is to provide judges with new legal tools with which to 'leverage' addicts into treatment." <u>Ibid.</u> (quoting Report to the Governor by the Attorney General on the Need to Update the Comprehensive Drug Reform Act of 1987) (alteration in original).

The Attorney General's "leverage" recommendation was consistent with the then-recent report of The President's Commission on Model State Drug Laws. That Commission explained that,

> [b]ecause of the nature of addiction, few drug abusing or addicted persons "volunteer" for treatment on their own initiative. Typically, the decision to undergo treatment and to engage the rehabilitative process is a result of pressure or coercion brought to bear by others . . . . State legislatures must recognize that in many if not most criminal cases, the necessary coercion will have to come from courts . . . precisely because addicts are often in denial and may perceive

46

little incentive to initiate the difficult rehabilitative process.

[President's Commission on Model State Drug Laws,
Vol. 4 G-141 (Dec. 1993).]

A study prepared for the President's Commission by the Rutgers University Center of Alcohol Studies found that "coerced[,] criminally involved clients do as well, if not better, than voluntary clients. Moreover, the effect of court involvement, thought by some to compromise a therapeutic relationship, appears instead to help retain patients in treatment and help them to achieve a more favorable and stable outcome." President's Commission on Model State Drug Laws, Executive Summary at iii (Dec. 1993).

Relying on the Rutgers research study, the President's Commission concluded that,

> Recent empirical studies confirm that drug treatment works for offenders who are compelled to engage the treatment process as a condition of pretrial release, sentence, probation or parole. It simply makes sense to use the criminal justice system to constructively induce substance abusing and addicted offenders to accept help and to enter and to stay in treatment for as long as necessary to deal effectively with their drug problem.
>
> [President's Commission on Model State Drug Laws,
> Vol. 4 G-141 (Dec. 1993).]

The Commission thus recommended to state legislatures that "[the] addict in denial should be given few choices." Id. at G-160.

47

Before the 2012 Amendments were enacted, special probation could be imposed only when a defendant voluntarily sought treatment by affirmatively applying to Drug Court. N.J.S.A. 2C:35-14, in other words, depended on an addict making the rational choice to seek treatment. A defendant could avoid interventional treatment simply by choosing not to apply to Drug Court. As the program's cost-effectiveness was proven and more resources were dedicated to support it, it became apparent that the voluntary application requirement impeded the program's expansion, thereby preventing it from reaching its full potential.

The criminal justice system, meanwhile, routinely accepted—dare we say, enabled—an addict's silent election to avoid treatment. In many cases, it was expedient for defendants, their counsel, prosecutors, and sentencing courts to dispose cases through the traditional plea-bargaining process, which typically provides for shortened terms of incarceration in exchange for a defendant's waiver of the right to a jury trial. The criminal justice system in some cases turned a blind eye to the warning signs of a defendant's drug dependence because of what was essentially an unspoken "don't ask/don't tell" policy. Inspired by the proven cost-benefits of Drug Court, the Legislature by

enacting the 2012 Amendments established a new policy that requires sentencing courts to be watchful for telltale indicators of possible addiction.[18]

---

[18] N.J.S.A. 2C:35-14.1(b) specifies eight objective indicators that "shall provide a reasonable basis to believe that a person may be drug dependent[.]" These circumstances are:

> (1) the present offense involves a controlled dangerous substance;
>
> (2) the defendant has previously been convicted of an offense involving a controlled dangerous substance, was admitted to pretrial intervention or supervisory treatment, or received a conditional discharge for a charge involving a controlled dangerous substance;
>
> (3) the defendant has any other pending charge in this State, any other state, or a federal court involving a controlled dangerous substance;
>
> (4) the defendant has any time previously received any form of drug treatment or counseling;
>
> (5) the defendant appears to have been under the influence of a controlled dangerous substance during the commission of the present offense, or it reasonably appears that the present offense may have been committed to acquire property or monies to purchase a controlled dangerous substance for the defendant's personal use;
>
> (6) the defendant admits to the unlawful use of a controlled dangerous substance within the year preceding the arrest for the present offense;
>
> (7) the defendant has had a positive drug test within the last 12 months; or

49

In a 2012 memorandum, the Attorney General explained that the newly-enacted N.J.S.A. 2C:35-14.1 and 2C:35-14.2 "will eventually[19] expand New Jersey's nationally-acclaimed Drug Court program by authorizing judges to order addicted non-violent offenders to participate in court-supervised drug treatment.  Until now, defendants had to apply for admission to Drug Court, and could choose to avoid treatment."   New Jersey Attorney General, "Memorandum to County Prosecutors on Implementation of Drug Court Reforms," at 1 (Aug. 13, 2012).

---

(continued)

> (8) there is information, other than the circumstances enumerated in paragraphs (1) through (7) of this subsection, which indicates that the defendant may be a drug dependent person or would otherwise benefit by undergoing a professional diagnostic assessment within the meaning of paragraph (1) of subsection a. of N.J.S. 2C:35-14.

[19]  The Legislature recognized that by authorizing courts to mandate treatment "regardless of whether the defendant has sought or consents to such a sentence," the resultant expansion of Drug Court would be substantial and for practical reasons could not be implemented immediately throughout the State. N.J.S.A. 2C:35-14.2(b).  Accordingly, the 2012 amendments provided for a phased-in implementation of the new compulsory treatment paradigm.  See N.J.S.A. 2C:35-14.3.  The compulsory treatment program was to be "fully implemented in the State no later than the fifth fiscal year following enactment provided that sufficient State funds have been appropriated."  Ibid.

A-2256-19

N.J.S.A. 2C:35-14.1 generally requires a sentencing court in certain clearly-defined circumstances, see supra note 18, to order a defendant who has not applied to Drug Court to submit to a professional diagnostic assessment—also known as a TASC evaluation—to determine whether he or she is in need of and would benefit from court-ordered treatment. Specifically, N.J.S.A. 2C:35-14.1(a) provides that:

> except as provided in subsection c.,[20] the court shall require a defendant to submit to a professional diagnostic assessment if:
>
> (1) there is a reasonable basis to believe that the defendant may be a drug dependent person as defined in N.J.S. 2C:35-2;
>
> (2) the defendant is charged with:
>
>> (a) a crime that is subject to a presumption of imprisonment pursuant to subsection d. of N.J.S. 2C:44-1; or
>>
>> (b) any crime of the third degree if the defendant has previously been convicted of a crime subject to the presumption of imprisonment or that resulted in imposition of a State prison term; and

---

[20] Subsection (c) provides that a court does not need to order diagnostic testing "if it is clearly convinced that such assessment will not serve any useful purpose." N.J.S.A. 2C:35-14.1(c). If the court declines to order diagnostic testing under subsection (c), the court must "place on the record the reasons for its decision." Ibid.

(3) the defendant is eligible to be considered for a sentence to special probation pursuant to the provisions of N.J.S. 2C:35-14.

[(emphasis added).]

When the diagnostic assessment ordered pursuant to N.J.S.A. 2C:35-14.1 shows a defendant is in need of treatment, N.J.S.A. 2C:35-14.2 generally requires the court to sentence the defendant to special probation under N.J.S.A. 2C:35-14 if he or she is legally eligible, unless the court makes specific findings why special probation would be inappropriate or unnecessary.

## B.

The statutory formulation for determining which defendants must be assessed for drug dependence under N.J.S.A. 2C:35-14.1 casts a wider net than the presumption of imprisonment in N.J.S.A. 2C:44-1(d) that is incorporated by reference in N.J.S.A. 2C:35-14(a), which, as we have explained, only includes defendants who presently are subject to a mandatory term of parole ineligibility or the presumption of imprisonment in N.J.S.A. 2C:44-1(d). Defendants presently subject to the presumption of imprisonment are expressly included under N.J.S.A. 2C:35-14.1(a)(2)(a). N.J.S.A. 2C:35-14.1(a)(2)(b) expands that pool by also including defendants convicted of a third-degree crime who previously have been convicted of a crime subject to the

presumption of imprisonment or that resulted in imposition of a state prison term.

The gravamen of the State's argument is that the formulation in N.J.S.A. 2C:35-14.1(a)(2)(b) not only serves to identify defendants who must submit to a professional diagnostic assessment but also determines whether a defendant is a Track One candidate who can only be admitted to Drug Court by means of special probation imposed pursuant to N.J.S.A. 2C:35-14. We fail to understand, however, how the formulation in N.J.S.A. 2C:35-14.1(a)(2)(b) could change the operational definition of who is "ineligible for probation" for purposes of N.J.S.A. 2C:35-14(a). For the reasons that follow, we conclude that N.J.S.A. 2C:35-14.1(a)(2)(b) does not impliedly amend N.J.S.A. 2C:35-14(a), does not change how a court determines whether a defendant is a Track One or Track Two candidate, and does not change the eligibility criteria for a Track Two candidate. We also reject the notion that N.J.S.A. 2C:35-14.1 and N.J.S.A. 2C:35-14.2 are meant to exclude any defendants from admission to Drug Court who would otherwise be admitted via Track Two.

"The chief aim when interpreting a law is to determine and give effect to the Legislature's intent." In re D.J.B., 216 N.J. 433, 440 (2014); DiProspero, 183 N.J. at 492. In order to determine the Legislature's intent, "courts look first to the plain language of the statute." D.J.B., 216 N.J. at 440. "If the

A-2256-19

language is clear, the court's job is complete."  Ibid.  Indeed, "[i]f the language

is clear and unambiguous, and susceptible to only one interpretation, no further

inquiry should be made."   Bishop, 429 N.J. Super. at 546.   But "[i]f the

wording of a law is ambiguous, a court may examine extrinsic evidence for

guidance, including legislative history and committee reports."   D.J.B., 216

N.J. at 440.  "Courts may also consider extrinsic evidence if a plain reading

would lead to an absurd result or if the overall statutory scheme is at odds with

the plain language."   Bishop, 429 N.J. Super. at 547.   When interpreting the

law, "[s]tatutes must also 'be read in their entirety; each part or section should

be construed in connection with every other part or section to provide a

harmonious whole.'"   D.J.B., 216 N.J. at 440 (quoting Burnett v. Cnty. of

Bergen, 198 N.J. 408, 421 (2009) (internal quotation marks omitted); Bedford

v. Riello, 195 N.J. 210, 224 (2008).

Applying these foundational principles of statutory construction, we first

examine the plain language in L. 2012, c. 23.  We know for certain that the

Legislature did not intend to alter the presumption of imprisonment.  That is

made plain in N.J.S.A. 2C:35-14.2(e), which unambiguously states

> [n]othing in this section shall be construed to alter the
> presumption of imprisonment contained in subsection
> d. of N.J.S. 2C:44-1 or to require or authorize the
> reduction or waiver of a mandatory period of parole
> ineligibility required by law, or to modify the
> exceptions to such requirements provided for by law,

54

including but not limited to those provided in N.J.S. 2C:35-12 and N.J.S. 2C:35-14.

We can hardly imagine a more clear and definitive declaration of legislative intent to leave the presumption of imprisonment in N.J.S.A. 2C:44-1(d) intact and unaltered.

The fact that the 2012 Amendments did not modify the language in N.J.S.A. 2C:35-14(a) that explains when a defendant is "ineligible for probation" likewise evinces the Legislature's intent to keep the incorporated-by-reference presumption of imprisonment intact and unaltered when determining eligibility for special probation. That portion of the special probation statute continues to refer only to defendants who are "subject to a presumption of incarceration or a mandatory minimum term of parole ineligibility." In other words, the operational definition of the term "ineligible for probation" was not amended to include defendants convicted of "any crime of the third degree [who have] previously been convicted of a crime subject to the presumption of imprisonment or that resulted in imposition of a State prison term[,]" which is the formulation used in N.J.S.A. 2C:35-14.1(a)(2)(b).

By enacting both N.J.S.A. 2C:35-14.1(a)(2)(a) and N.J.S.A. 2C:35-14.1(a)(2)(b), the Legislature clearly intended to require diagnostic testing of defendants who were previously subject to the presumption of imprisonment, and not just defendants who are presently subject to that presumption. The

Legislature expressly recognized the distinction between these two populations and thus the need to use separate paragraphs with distinct textual formulations to make certain that both groups fall within the ambit of the N.J.S.A. 2C:35-14.1 diagnostic testing paradigm. And yet the Legislature did not amend N.J.S.A. 2C:35-14 to expand the scope of special probation beyond the pool of defendants who are subject to the presumption of imprisonment defined in N.J.S.A. 2C:44-1(d).

Furthermore, it is evident the Legislature knew how to revise the eligibility criteria for special probation set forth in N.J.S.A. 2C:35-14 as shown conclusively by the fact that the 2012 Amendments did indeed amend N.J.S.A. 2C:35-14 by eliminating the bar for persons convicted of second-degree robbery and burglary. See supra note 16. The Legislature could easily have amended N.J.S.A. 2C:35-14(a) to include a reference to defendants previously convicted of a crime subject to the presumption of imprisonment or who previously served a state prison sentence but did not do so. We presume the decision to leave the first sentence of N.J.S.A. 2C:35-14(a) unaltered was intentional. See DiProspero, 183 N.J. at 496 (referring to "the presumption that the Legislature acted deliberately"). We therefore decline the State's invitation to graft language from N.J.S.A. 2C:35-14.1(a)(2)(b) into the operational definition of "ineligible for probation" codified in N.J.S.A. 2C:35-

14(a). See id. at 492 (noting that a court interpreting a statute cannot "write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment" (quoting Craster v. Bd. of Comm'rs of Newark, 9 N.J. 225, 230 (1952))).

We add in the interest of completeness that N.J.S.A. 2C:35-14.1 serves a different purpose than N.J.S.A. 2C:35-14. N.J.S.A. 2C:35-14.1 is designed to identify drug dependent offenders who have not applied for Drug Court and whose addictions might otherwise escape notice. Before L. 2012, c. 23 was enacted, some addicts opted for prison over treatment when given the choice. It thus makes sense that the Legislature would instruct sentencing courts to closely scrutinize suspected drug dependent offenders who previously served a prison sentence to determine if they have been suffering from a longstanding, untreated addiction prompting their recidivism.

TASC evaluations provide sentencing courts with "the full measure of [the defendant's] substance abuse history[.]" Clarke, 203 N.J. at 183. This information regarding a defendant's substance abuse history is helpful for a sentencing court not only because an unrecognized and untreated addiction bears significantly on the risk of re-offense, see N.J.S.A. 2C:44-1(a)(3) (defining as an aggravating factor "[t]he risk that the defendant will commit another offense"), but also because it may help to explain past criminal

behavior and put past crimes in context in terms of the goal of interrupting a recurring cycle of recidivism.

Furthermore, any interpretation of either or both N.J.S.A. 2C:35-14.1 and 2C:35-14.2 that would have the practical effect of restricting access to Drug Court contravenes the legislative purpose of the 2012 Amendments. As noted, statutes should be construed "in connection with every other part or section to provide a harmonious whole." D.J.B., 216 N.J. at 440 (quoting Burnett, 198 N.J. at 421. The overarching goal expressed in the 2012 Amendments was to enlarge, not reduce, the pool of defendants who could participate in Drug Court. In Maurer, we cited the legislative history of L. 2012, c. 23, explaining,

> [a]lso, as to the Drug Court Statute itself, a Senate committee stated the statute was being amended "in order to permit additional offenders who may benefit from the program to be diverted into the program instead of being sentenced to a term of incarceration . . . . [by giving] a court . . . greater discretion to place the person on special probation, even if one or more of the enumerated discretionary factors was not met by a particular defendant."
>
> [438 N.J. Super. at 414 (alterations in original) (quoting Senate Budget and Appropriations Comm. Statement to S. 881 (April 3, 2012)).]

Finally, we note that the State's interpretation could lead to an anomalous result. If, as the State argues, a defendant presently convicted of a

third-degree crime who has previously been convicted of a second-degree crime or previously was sentenced to prison can only be admitted to Drug Court via Track One, then the Drug Court option would be foreclosed if such a defendant could not meet all nine eligibility criteria in N.J.S.A. 2C:35-14 even though that defendant is not presently subject to the presumption of imprisonment and thus could, in theory, be sentenced to regular probation without Drug Court. Accordingly, under the State's interpretation, a defendant could be legally ineligible for Drug Court even though he or she is not legally ineligible for regular probation. As we have already highlighted, N.J.S.A. 2C:35-14.2(e) expressly states, "[n]othing in this section shall be construed to alter the presumption of imprisonment contained in subsection d. of N.J.S. 2C:44-1 . . . ." As the Supreme Court emphasized in Meyer, "[i]t is inconceivable that the Legislature granted a trial court power to impose a probationary sentence, but not the power to attach the one condition necessary to address the offender's desperate needs—a drug rehabilitation program." 192 N.J. at 436.

## VI.

The determination that a defendant is legally eligible for Drug Court via Track Two does not lead inexorably to his or her admission. See Clarke, 203 N.J. at 176 ("Under the second track, the applicant must convince the judge

that a probationary sentence under the general sentencing provisions of the Code of Criminal Justice is appropriate."); see also Figaro, 462 N.J. Super. at 579 (noting the trial court must decide "whether a probationary sentence is appropriate"). Drug Court judges serve as the gatekeepers to the program and are responsible not only for linking deserving candidates to treatment services but also for promoting public safety and ensuring the continued effectiveness of the program by only admitting qualified candidates. Under either track, the sentencing judge retains discretion to deny admission to a legally eligible defendant after considering the recommendations of the substance abuse evaluator and the prosecutor, the Drug Court Manual—which emphasizes the need to consider danger to the community—and the relevant aggravating and mitigating factors that must be applied and weighed in all sentencing proceedings.

The Public Defender contends that N.J.S.A. 2C:35-14.2 establishes a "new type of legal presumption" that certain drug dependent offenders must be sentenced to special probation. Specifically, N.J.S.A. 2C:35-14.2(b) provides:

> Notwithstanding any law to the contrary, where the court finds that a defendant is a person in need of treatment as defined in subsection f. of this section and that the defendant additionally meets all the requirements of N.J.S. 2C:35-14, the court shall sentence a defendant to special probation pursuant to the provisions of N.J.S. 2C:35-14 for the purpose of participating in a court-supervised drug treatment

program, regardless of whether the defendant has sought or consents to such a sentence, unless:

(1) the court finds that a sentence of imprisonment must be imposed consistent with the provisions of chapters 43 and 44 of Title 2C of the New Jersey Statutes, in which case a sentence of imprisonment shall be imposed; or

(2) the court is clearly convinced that:

> (a) the treatment, monitoring, and supervision services that will be provided under N.J.S. 2C:45-1 are adequate to address the defendant's clinical needs;

> (b) the defendant's treatment needs would not be better addressed by sentencing the defendant to special probation pursuant to N.J.S. 2C:35-14;

> (c) no danger to the community would result from placing the person on regular probation pursuant to N.J.S. 2C:45-1; and

> (d) a sentence of probation authorized under N.J.S. 2C:45-1 would be consistent with the provisions of chapters 43 and 44 of Title 2C of the New Jersey Statutes.

[(emphasis added).]

N.J.S.A. 2C:35-14.2(c) further instructs that "the court shall place on the record the reasons for its decision."

We recognize that the "shall/unless" formulation used in N.J.S.A. 2C:35-14.2 is similar in grammatical structure to the presumptions of imprisonment and non-incarceration in N.J.S.A. 2C:44-1(d) and N.J.S.A. 2C:44-1(e). We do

61 <span>A-2256-19</span>

not, however, read N.J.S.A. 2C:35-14.2(b) as substantively restricting a sentencing court's discretion to deny admission to Drug Court other than to require the court to consider a defendant's treatment needs and then apply the relevant factors and circumstances set forth elsewhere in the Penal Code. We believe that N.J.S.A. 2C:35-14.2(b) was not designed to limit the court's discretion to impose a prison sentence but rather to limit the discretion of an addicted defendant to choose prison over treatment. This section serves to empower Drug Court judges, enhancing their authority over a defendant.

The gravamen of N.J.S.A. 2C:35-14.2(b) and (c) is to require the court to pay close attention to the individual circumstances of the defendant's addiction and to require the court to explain its reasons if it decides ultimately not to impose special probation. A statutory requirement to make specific findings justifying a sentencing decision is hardly novel. Sentencing courts have always been required to state the reasons for their decisions. See Clarke, 203 N.J. at 177 ("Because the decision whether to admit the applicant into Drug Court is essentially a sentencing one, the 'trial judge is required to consider all of the aggravating and mitigating factors and to find those supported by the evidence.'" (quoting State v. Dalziel, 182 N.J. 494, 505 (2005))); see also Natale, 184 N.J. at 488 (2005) ("As always, every judge

must 'state on the record' how he or she arrived at a particular sentence." (quoting N.J.S.A. 2C:43-2(e))).

As we have explained, N.J.S.A. 2C:35-14.1 and N.J.S.A. 2C:35-14.2 work in tandem to make certain that sentencing courts closely scrutinize defendants in need of treatment but who have not voluntarily applied for Drug Court. The express requirement in N.J.S.A. 2C:25-14.2(c) that the sentencing court explain the reasons for its decision not to impose special probation is consistent with that objective. The articulation requirement, however, does not substantively amend the criteria set forth in the Penal Code that are used to determine whether imprisonment would be the appropriate sentence. Indeed, N.J.S.A. 2C:35-14.2(b)(2)(d) expressly incorporates "the provisions of chapters 43 and 44" of the Penal Code in explaining when a sentence of imprisonment rather than special probation shall be imposed.

As a general matter, sentencing decisions are reviewed under a deferential standard. See Roth, 95 N.J. at 364–65 (holding that an appellate court may not overturn a sentence unless "the application of the [Penal Code] guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience"). We likewise owe deference to the sentencing decision to grant or deny admission to the Drug Court program.

63

Drug Courts, it bears repeating, are aptly characterized as "specialized courts." See Meyer, 192 N.J. at 428 ("Drug Courts are specialized courts within the Superior Court."). We believe deference to the findings made by Drug Court judges is especially appropriate in view of their expertise in addressing "the unique problems and needs posed by non-violent, drug-dependent offenders[.]" Id. at 423; Cf. Cesare v. Cesare, 154 N.J. 394, 413 (1974) (recognizing that deference is accorded to factfinding by Family Part judges because they possess "special jurisdiction and expertise in family matters").

We add in this regard that one of the important innovations of the Drug Court program is that judges are charged with close supervision of defendants throughout their extended participation in the program. The supervisory role that judges play throughout the course of treatment is a major factor in the success of the program. See Meyer, 192 N.J. at 429 ("What distinguishes Drug Courts from other courts is the 'oversight and personal involvement of the drug court judge in the treatment process.'" (quoting 2002 Manual at 3)).

We note also that the Drug Court Manual lists the distinctive responsibilities of a Drug Court judge in administering and supervising the program. In relevant part, these specialized responsibilities include:

> Stay[ing] abreast of current law and research on best practices in [D]rug [C]ourt[;]

Understand[ing] behavior modification techniques and best practices as they relate to the imposition of incentives and sanctions[;]

Understand[ing] and implement[ing] the concept of "shaping" as it relates to behavior modification, which is defined as drawing a distinction between proximal and distal behavioral goals; proximal (participants are already capable of engaging in) such as telling the truth, attending counseling sessions[,] or producing a urine specimen[,] and distal (desired behavior that could take time to achieve) such as gainful employment, or improved parenting skills[;]

Acquir[ing] an understanding of 12-step self-help meetings and other recovery supports and an understanding of substance-use disorders, treatment, including medication-assisted treatment, and opioid overdose antidotes, including Naloxone[;]

Tak[ing] an active role in educating colleagues and other members of the criminal justice system and community about the drug court program[;]

Attend[ing] ongoing trainings on legal and constitutional issues in drug court such as statewide and national drug court conferences, to remain up-to-date on current practices in the field[;]

[Being] knowledgeable about gender, age, cultur[e], trauma, and mental health issues that could impact a participant's success[; and]

Mak[ing] certain that drug court best practices are implemented and that the team maintains fidelity to the New Jersey Drug Court model.

[2020 Manual, at 14–15.]

In view of these specialized responsibilities and their experience in overseeing Drug Court participants, Drug Court judges are uniquely qualified to evaluate a defendant's capacity to deal successfully with the difficult challenges of rehabilitation.  Accordingly, once a candidate's track designation has been properly made in accordance with law and the defendant has been determined to be legally eligible for Drug Court, substantial deference should be accorded to the Drug Court judge's ultimate decision to grant or deny admission to the program.

## VII.

For the sake of clarity and in the interest of simplifying the decision-making framework, we briefly summarize the sequence of decisions a Drug Court judge must make in determining whether a defendant is legally eligible to be admitted to Drug Court and if so, whether he or she should be admitted.

Legal eligibility is a threshold question that must be decided in all cases. Every candidate falls under one of two distinct and mutually exclusive tracks. To determine legal eligibility, the trial court must first determine whether the defendant is a Track One or Track Two candidate.

A defendant is a Track One candidate if, and only if, he or she is presently subject to the presumption of imprisonment in N.J.S.A. 2C:44-1(d) or to a mandatory term of parole ineligibility.  If the defendant is not presently

A-2256-19

subject to the presumption of imprisonment as defined in N.J.S.A. 2C:44-1(d) or to a mandatory term of parole ineligibility, he or she is a Track Two candidate.

The critical question is not whether the defendant is likely to be sentenced to prison based on the weighing of aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b). A defendant, moreover, is not subject to the presumption of imprisonment by reason of his or her past criminal history, except in the case of a repeat automobile theft offender. Nor is a defendant presently subject to the presumption of imprisonment simply because he or she was previously convicted of a crime subject to the presumption or because he or she has previously been sentenced to state prison. Rather, the presumption of imprisonment in N.J.S.A. 2C:44-1(d) is determined by reference to the present offense(s) for which defendant is convicted and is to be sentenced.

A Track One candidate can be admitted to Drug Court only if the court sentences the defendant to special probation pursuant to N.J.S.A. 2C:35-14. Track One candidates therefore must meet all nine eligibility criteria for special probation set forth in N.J.S.A. 2C:35-14(a). If a Track One candidate does not meet any of the nine enumerated prerequisites, he or she is legally

67

ineligible for special probation and therefore may not be admitted to Drug Court.

A Track Two candidate need not satisfy the nine eligibility criteria set forth in N.J.S.A. 2C:35-14. However, pursuant to the Drug Court Manual and in accordance with Figaro, the trial court may in the exercise of discretion consider the eligibility prerequisites enumerated in N.J.S.A. 2C:35-14(a) as relevant factors that bear on the defendant's suitability for Drug Court.

If the trial court determines that the candidate is legally eligible for Drug Court via either track, the court must next decide whether to admit the candidate in the exercise of sentencing discretion. The court must consider the TASC evaluation, the recommendation of the substance abuse evaluator, and the non-binding recommendation of the prosecutor. As with all sentencing decisions, the court must consider the applicable aggravating and mitigating circumstances delineated in the Penal Code. As noted, in the case of a Track Two candidate, the court may also consider the factors enumerated in N.J.S.A. 2C:35-14(a).

The foregoing sequence of decisions applies whether the defendant is a voluntary applicant for Drug Court or a non-voluntary candidate identified pursuant to N.J.S.A. 2C:35-14.1.

A-2256-19

In <u>Clarke</u>, the Supreme Court made clear that "[a] fair deliberative process requires that the Drug Court judge consider all of the relevant information available."   203 N.J. at 182.   This includes the completed substance abuse evaluation and the evaluator's recommendation.   <u>Ibid.</u>   The Court concluded in that case,

> [w]ithout considering the full measure of [the defendant's] substance abuse history and the written recommendation of the substance abuse evaluator, the trial court could not have given full and fair consideration of [defendant's] appeal.
>
> Although a Drug Court judge is not bound by a substance abuse evaluator's recommendation for in-patient drug treatment, the evaluation is a critical component of a decision to grant or deny admission into the Drug Court program.  The substance abuse evaluator's recommendation can assist in the judge's consideration of a defendant's need for treatment and the probable effect of any addiction on future criminal behavior.  A remand is necessary for the Drug Court judge to consider the substance abuse evaluator's report.
>
> [<u>Id.</u> at 183.]

The State candidly acknowledged at oral argument before us that a full review was not done in some of the cases in this consolidated appeal because

the trial court did not have the benefit of TASC evaluations.[21] A remand is therefore needed in any case before us where the trial court did not consider a TASC evaluation unless the record clearly shows that the defendant is a Track One candidate who is legally ineligible for special probation and thus categorically ineligible for admission to Drug Court.

IX.

As we have noted, as a general proposition, we review a sentencing court's decision to admit or deny admission to Drug Court for an abuse of discretion. Maurer, 438 N.J. Super. at 418 ("By its action [to remove the prosecutorial veto], the Legislature clearly evinced an intention to rely on a judge's discretion and ability to better determine admission without continuing [that] right to veto."); see also State v. Megargel, 143 N.J. 484, 493 (1996) (holding that appellate courts review sentences only to determine: "(1) whether the exercise of discretion by the sentencing court was based upon findings of fact grounded in competent, reasonably credible evidence; (2) whether the sentencing court applied the correct legal principles in exercising its discretion; and (3) whether the application of the facts to the law was such a

---

[21] We note that defendants Falcone, Fogg, and Harris submitted to TASC evaluations and were each found to be drug dependent.

clear error of judgement that it shocks the conscience" (citing Roth, 95 N.J. at 363–65)).

However, as we have also noted, we review a sentencing court's interpretation of the relevant statutes and the Drug Court Manual de novo. Figaro, 462 N.J. Super. at 571. Although we generally defer to a sentencing court's findings of fact and weighing of aggravating and mitigating factors, Megargel, 143 N.J. at 493, we are not bound by a judge's interpretations of the legal consequences that flow from established facts. See Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Thus, our review of Drug Court track classification is de novo, as this determination is based solely on whether the person is presently subject to a presumption of imprisonment or a mandatory minimum period of parole ineligibility.

Because the trial court in some of the cases before us misinterpreted the statutory framework and applied the wrong track classification, we deem it necessary to remand those cases for reconsideration. The trial court initially denied admission to these defendants on the grounds they were categorically disqualified under N.J.S.A. 2C:35-14. We recognize that the trial court issued amplification letters in which the court essentially ruled—in the alternative—that these defendants would be denied admission to Drug Court even if they were deemed to be Track Two candidates. We believe it is important,

71

however, for a court considering the criteria enumerated in N.J.S.A. 2C:35-14(a) to recognize whether those circumstances are legal prerequisites for Track One candidates or merely relevant factors to be considered along with all other relevant circumstances for Track Two candidates. Importantly, when those statutory criteria are deemed to be discretionary factors rather than categorical disqualifying circumstances, they must be viewed through the lens of a TASC evaluation. A defendant's prior criminal history, for example, may be the product of a long-standing addiction. In those circumstances, a trial court exercising its discretion in dealing with a Track Two candidate should consider whether the time has finally come to address the defendant's addiction and interrupt the cycle of recidivism.

So too a trial court's determination whether a Track Two candidate's admission to Drug Court would pose a danger to the community should be made with regard to a TASC evaluation. That professional diagnostic assessment might inform not only whether the circumstances giving rise to the finding of danger—such as past criminal behavior—can be attributed to a long-standing addiction but also whether and to what extent rehabilitation services such as inpatient treatment might ameliorate the risk of future danger.

We recognize that the trial court on remand may well reach the same conclusions as before. The court on remand retains discretion to reject a Track

Two candidate based on the court's consideration of the TASC evaluation and recommendation of the evaluator, the non-binding recommendation of the prosecutor and other team members, the factors set forth in N.J.S.A. 2C:35-14(a) as permitted under Figaro and the 2020 Manual, the danger defendant's admission would pose to the community, and the aggravating and mitigating circumstances set forth in N.J.S.A. 2C:44-1(a) and (b).  We offer no opinion as to whether any of the five defendant-appellants in this consolidated appeal should be admitted to Drug Court.

Those defendants—Edger, Santiago, Nelson, Rice, and Matlack—seek to have their cases remanded to a different judge, arguing that the trial court's amplification letters suggest the judge is predisposed to deny their admission to Drug Court under Track Two.  We reject that argument.  When leave to appeal an interlocutory order is granted, a Law Division judge is permitted to amplify the statement of reasons previously made.  R. 2:5-6(c).[22]  It is well-

---

[22] We note that in some cases before us, defendants challenge the trial court's amplification letters on procedural grounds, claiming that counsel had not been given an opportunity to be heard on the applicability and weighing of aggravating and mitigating factors.  The records show that the State in each case raised the issue of aggravating and mitigating factors at oral argument before the trial court.  We note that defendants therefore had an opportunity to respond to the State's arguments.  In any event, because the trial court's amplification letters were issued only in those cases that we now remand for reconsideration, counsel will again have an opportunity for allocution at the appropriate time.

settled, moreover, that "[b]ias cannot be inferred from adverse rulings against a party." Strahan v. Strahan, 402 N.J. Super. 298, 318 (App. Div. 2008).

We note that in Clarke, the Court remanded to the same judge for reconsideration notwithstanding the judge had already denied the defendant's application for Drug Court based on a misinterpretation of the statute[23] and before having all relevant information about the defendant's history of substance abuse and treatment needs. 203 N.J. at 183. We likewise have complete confidence that the trial court on remand will faithfully and impartially apply the relevant facts to the statutory law as we have interpreted it.

The Supreme Court in Clarke also held that motions for determination of Drug Court eligibility do not require plenary hearings and that "an informal hearing is sufficient for the Drug Court to give full and fair consideration to a defendant's application to the Drug Court program." Id. at 168. We leave to the discretion of the trial court to determine how remand proceedings are to be conducted.

---

(continued)

[23] In Clarke, the trial court misconstrued the statutory term "drug dependent person." 203 N.J. at 180–82.

X.

Applying the foregoing principles, we affirm the Law Division orders admitting defendants Falcone, Fogg, and Harris to Drug Court. The trial court correctly classified these defendants as Track Two candidates because none of them are presently subject to the presumption of imprisonment or a mandatory term of parole ineligibility. We reject the State's contention that these defendants are Track One candidates by virtue of their criminal records or past incarceration episodes.

In these three cases, the trial court properly considered the criteria enumerated in N.J.S.A. 2C:35-14(a) as relevant factors instead of categorical disqualifying circumstances. In view of our deferential standard of review, we see no basis to second-guess the trial court's assessment of the relevant considerations.

We reverse the orders denying admission to defendants Edger, Santiago, Nelson, Rice, and Matlack. The trial court erred in determining that these defendants are Track One candidates because none of them presently face the presumption of imprisonment or a mandatory parole ineligibility term.[24]

---

[24] We note again with respect to defendant Rice that the record does not indicate that the State has applied for an extended term pursuant to N.J.S.A. 2C:43-6(f), which would trigger a mandatory minimum term of parole ineligibility.

Furthermore, we see nothing in the record indicating that the trial court in these cases considered a TASC evaluation and the recommendation of the TASC evaluator. We therefore remand these matters to the trial court for reevaluation of their candidacy for Drug Court in accordance with the principles and guidelines set forth in this opinion. We express no opinion whatsoever about these defendants' potential admission to the program or the ultimate sentences to be imposed by the court upon any adjudication of guilt.

Affirmed as to defendants Falcone, Fogg, and Harris. Reversed and remanded as to defendants Edger, Santiago, Nelson, Rice, and Matlack. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2256-19